UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFERY ALLAN SKODAK,

    Plaintiff,

-vs-

CASE NO: 04-74397
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

ACCOR NORTH AMERICA, INC., a
foreign corporation, d/b/a MOTEL 6,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

**BACKGROUND:**

Plaintiff Jeffery Skodak ("Plaintiff"), is a resident of Lapeer County, Michigan. Defendant Accor North America ("Defendant"), d/b/a Motel 6, is a Delaware corporation with its principal place of business in Carrollton, Texas.

Plaintiff was employed in property maintenance by Defendant at a Motel 6 in Auburn Hills, Michigan from August 11, 2001 until February 10, 2002. During Plaintiff's employment with Motel 6, Gordon Mattson ("Mattson") served as Plaintiff's supervisor, and Gambino Padilla ("Padilla") served as a housekeeper.

Plaintiff contends that from November 3, 2001 until January 20, 2002, he was subjected to frequent and unwelcome conduct and comments of an offensive and sexual nature including uninvited offensive touching, sexual advances, requests for sexual favors, and vulgar and derogatory names of a sexual nature by Plaintiff's co-worker Padilla and Plaintiff's supervisor Mattson. Plaintiff argues that these unwelcome sexual advances and conduct by Defendant's

employees had the purpose and effect of substantially interfering with Plaintiff's employment and creating an intimidating, hostile, and offensive work environment.

Plaintiff filed a complaint in the Michigan Sixth Judicial Circuit in Oakland County on October 6, 2004. Defendant removed the case to this Court on diversity grounds on November 10, 2004. Plaintiff contended that Defendant had actual and constructive notice of the unwelcome sexual advances and conduct by Defendant's employees toward Plaintiff and failed to take prompt and adequate remedial action. Plaintiff avers that Defendant's failure to take prompt remedial action violated the Michigan Elliott Larsen Civil Rights Act ("ELCRA"). Plaintiff claims that as a result of Defendant's inaction, he sustained injuries including loss of earnings, loss of career opportunities, physical pain and suffering, mental and emotional distress, fright, shock, embarrassment, humiliation, and mortification.

On January 30, 2006, the parties verbally entered into a settlement agreement. On January 31, 2006, Defendant's counsel memorialized this agreement in writing via a letter to Plaintiff's attorney. Thus, there was a settlement agreement signed by Defendant's attorney.

The next day, on February 1, 2006, Defendant's counsel sent a second letter to Plaintiff's attorney informing her that because Defendant had received information suggesting that Plaintiff had committed fraud in this lawsuit, Defendant was withdrawing its settlement offer "effective immediately."

One day later, on February 2, 2006, Carissa Pilarski ("Pilarski"), Plaintiff's former girlfriend, provided Defendant with an affidavit detailing allegedly fraudulent conduct on the part of Plaintiff.[1]

---

[1] The affidavit states:

Plaintiff filed a motion to enforce the settlement agreement on March 23, 2006. On July 18, 2006, the Court held an evidentiary hearing on the motion, during which Pilarski, Plaintiff, and Accor North America's staff counsel Carolyn Ritchie testified. The Court allowed the parties to file post-hearing briefing on the issue of fraudulent inducement.

During the hearing, Ms. Pilarski testified as follows:

Q:     Did he say anything in particular about . . . the journal, the counselor or Mr.

---

1. I dated Jeffery Skodak from approximately August 2003 through August 2005.
2. During the time we were dating, Jeff told me about a sexual harassment lawsuit he filed against his old employer, Motel 6. Jeff used to brag that he was going to win $250,000.00 from the lawsuit.
3. Jeff told me that he lied about many of the allegations in the lawsuit. For example, around the time he had to meet with Motel 6's lawyers to answer questions, Jeff was watching a video his lawyer gave him on how to properly answer questions. At that time, Jeff let me read a journal he had produced in the lawsuit. Jeff told me he made up most of the entries in the journal for the lawsuit. In fact, Jeff told me the only thing that was true in the journal was that a couple of people chased him off the property because they were going to beat him up. Jeff told me that he never went back to work at Motel 6 after that. Jeff also told me that he lied about the alleged sexual harassment causing him to break up with his girlfriend. Jeff also said that he did not write any of the entries on the dates listed in the journal.
4. Jeff told me that he met with a counselor for the lawsuit. Jeff said he made up most of the information that he told the counselor. Jeff also said he never took the medication that his doctor prescribed him for depression.
5. Jeff told me that his friend Derek testified in his lawsuit against Motel 6. Jeff and Derek spoke before Derek testified. Jeff told me that when he got money from the lawsuit, Derek would get a cut of the money.
6. During the time we were dating, Jeff did not suffer from any depression. Jeff did not have any trouble sleeping. Jeff also did not have any crying spells. Jeff did not complain to me about frequent headaches, stomach aches, nightmares or feelings of hopelessness.
7. Jeff told me that he had a degree from the University of Michigan.
8. Jeff was always looking for a way to get rich quick. Jeff was always sending away for the materials he would see on infomercials on getting rich quick.

(Pilarski Aff., Def.'s Resp. Ex. 3).

3

        [Derrick] Bruce at this point?

A:    He had said that Derrick would help him with the case and that he would receive a cut of the money after the settlement went through, and he said that during the counseling sessions he had lied to the counselor. He had a girlfriend at the time. He said that all the things that were going on with the case caused him to break up with his girlfriend. That wasn't true. He told me that he lied about the depression that he had.

. . .

Q:    Did the two of you discuss anything else about the journal?

A:    I asked him about the contents of it, and he said that the dates listed on the entries, he didn't really write the journal on those dates. He said that things in here were exaggerated, the truth was stretched, he made some of it up.

. . .

Q:    But it's also true you never claim that he said he would give [Derrick Bruce] a cut of the money for lying in this lawsuit; isn't that true?

A:    That is true.

(Pilarski Test., Tr. 14, 17-18, 36).

      Significantly, Pilarski's testimony did not support some of the significant allegations made in the affidavit. Thus, while the affidavit stated that Plaintiff said he had made up most of the entries in the journal, she testified that "he made some of it up." Also, the testimony clarified that Plaintiff never asked Mr. Bruce to lie in this lawsuit.

      Plaintiff also provided the following testimony during the hearing:

Q:    Did you ever tell anyone that you lied about the allegations in this lawsuit?

A:    No.

. . .

Q:    . . . Did you make up the dates in the journal?

A:    No.

Q:    Did you make up any of the facts of the journal?

A:    No.

. . .

Q:    You never told Carissa [Pilarski] that you made up the information in the journal?

    A:    No.

. . .

    Q:    . . . Have you ever offered Derrick [Bruce] a cut of any monies –

    A:    No.

    Q:    – received in this case? Have you ever offered him any type of compensation?

    A:    No, nor have I given him anything.

. . .

    A:    I never lied to my counselor.

. . .

    A:    I never told her I lied to my counselor.

. . .

    Q:    . . . Did you ever tell her that you had not taken the prescription medication?

    A:    No.

(Skodak Test., Tr. 67-70).

**ANALYSIS**

This Court has the "inherent authority and equitable power to enforce agreements in settlement of litigation before it." *Bowater N. Am. Corp. v. Murray Machinery, Inc.*, 773 F.2d 71, 76 (6th Cir. 1985). "A valid settlement agreement may only be set aside for fraud or mutual mistake of fact." *Guy v. Lexington-Fayette Urban County Gov't*, 57 Fed. Appx. 217, 224 (6th Cir. 2003) (citing *Estate of Jones v. Commissioner*, 795 F.2d 566, 573-74 (6th Cir. 1986)). The Sixth Circuit in *Guy* explained that:

> Fraud can be either actual or constructive. Actual fraud is "deception intentionally practiced to induce another to part with property or to surrender some legal right" while constructive fraud is the "breach of legal or equitable duty which, in spite of the fact that there is no moral guilt resulting from the breach of duty, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests."

*Id.* (citing *Epstein v. United States*, 174 F.2d 754, 765-66 (6th Cir. 1949)). "One who attacks a settlement must bear the burden of showing that the contract he made is tainted with invalidity"

in the form of fraud or by mutual mistake. *Brown v. County of Genesee*, 872 F.2d 169, 174-75 (6th Cir. 1989).

"A misrepresentation requires reasonable reliance on a false representation." *In re Archambault,* 174 B.R. 923, 933 (Bankr. W.D. Mich. 1994) (citing *State-William Partnership v. Gale*, 169 Mich. App. 170, 425 N.W.2d 756 (1988)). "There can be no fraud where a person has the means to determine that a representation is not true." *Nieves v. Bell Indus.*, 204 Mich. App. 459, 464 (Mich. Ct. App. 1994); *see also Montgomery Ward & Co. v. Williams*, 330 Mich. 275 (1951); *Webb v. First of Michigan Corp.*, 195 Mich. App. 470, 474 (1992)).

The Court concludes that Defendant has not met its burden of showing that the instant contract was "tainted with invalidity" in the form of fraud or by mutual mistake.

Defendant cites *Quinn v. City of Kansas City*, 64 F. Supp. 2d 1084. 1093 (D. Kan. 1999) for the proposition that "[t]he issue is not whether defendants believed plaintiff's testimony but whether defendants subjectively believed that a jury could accept it." In *Quinn*, the defendants sought to rescind a settlement agreement after they discovered that plaintiff had lied in his deposition. The *Quinn* plaintiff argued that the defendant could not establish fraud based on his false testimony because the defendants had evidence that disputed plaintiff's testimony and because they doubted that he was telling the truth. In finding that the settlement was induced by fraud, the court focused on "the possibility that a *jury* would believe plaintiff forced defendants to attach reasonable importance to his false testimony in deciding whether to settle the case." *Id.* at 1092 (emphasis in original). However, the Court notes that in *Quinn*, the plaintiff had sued the city and several police officers for the use of excessive force, and that plaintiff admitted in another related case that he had lied during his deposition about the extent of his injuries

6

sustained and the illegal activities of his cohorts. 64 F. Supp. 2d at 1091-92.[2] Thus, the court's finding in *Quinn* was supported by concrete evidence that the plaintiff had made statements that were "obviously untrue"[3] and that the lies were relied upon by the city; if the defendants had known that plaintiff had not been injured, then the parties would not have been settled at all.

Here, in contrast, Plaintiff has never admitted that he lied about what happened to him at work nor that he lied in the journals chronicling his work experiences. Therefore, there is no conclusive evidence that Plaintiff perjured himself with respect to occurrences that he alleges took place while he was employed at Motel 6. Significantly, the testimony of Plaintiff's former girlfriend Carissa Pilarski was not specific on any particular statements that Plaintiff may have fabricated. Her testimony would only provide additional evidence that Plaintiff *may* have been lying – it is not conclusive on that point.

Defendant presumably took into account the weight of the evidence against Plaintiff, including what Defendant already knew about his prior fabrications about his education,[4] and

---

[2] The plaintiff had stated in a prior deposition that he had a deviated septum, testimony which the court found to be "intentionally deceptive." *Id.* at 1092.

[3] *Quinn*, 64 F. Supp. at 1091.

[4] During the hearing, Defendant's counsel recited testimony from Plaintiff's deposition, prior to questioning Plaintiff:

> Q:   . . . again you were asked during your deposition about going to college, and . . . you were asked: So you stopped working at Rolling Hills then because you were going full time to school; is that correct? <u>Answer</u>: Yes, sir. <u>Question</u>: At Mott Community College? <u>Answer</u>: Yes, sir. <u>Question</u>: Did you complete the schooling and get your degree? <u>Answer</u>: Yes. <u>Question</u>: And when was that? When did you get your degree? <u>Answer</u>: I don't -- I don't recall the exact -- <u>Question</u>: You have a certificate or something? <u>Answer</u>: Right, right. Yes, sir. <u>Question</u>: That I could consult if I were to ask for it? <u>Answer</u>: Yes. <u>Question</u>: Did you get a Bachelor's degree? <u>Answer</u>: No, sir. I didn't finish. I intended to finish for my Bachelor's. I got an Associate's degree. <u>Question</u>: Got it. So you obtained your Associate's degree. You don't recall what year. Is that fair? <u>Answer</u>: That's fair. Yes, sir. <u>Question</u>: How long did it take you to get the Associate's degree, a couple of years? <u>Answer</u>: I did it pretty quick because I

could have deposed Pilarski at an earlier time if it had chosen to do so.

Plaintiff is correct in his assertion that Defendant has not met its burden of proving that he procured the settlement through fraud. Defendant argues that it did not know the relevance of

---

              was taking extra classes, so I'd say a year and a half. As of -- did you see the testimony I referenced?
A:     Yes.

(Skodak Test., Tr. 84-85). Thereafter, Plaintiff testified as follows:

Q:     As of the June 28, 2000, deposition, however, you didn't have an Associate's degree, did you?
A:     No, sir.
Q:     You claim that you never told Ms. Pilarski that you lied to Christian Family Services, correct?
A:     Yes, sir.
Q:     And in your testimony today you said that you never lied to the Christian Family Services counselors, correct?
A:     Yes.
. . .
Q:     . . . When you first went to Christian Family Services, they ask you to fill out a client self-report form, correct?
A:     Yes.
. . .
Q:     And also under education . . . you were asked type of college education or vocational training, colon, degree, slash, certificate. See that question there?
. . .
A:     Okay. Yes.
Q:     And next to that you wrote down Associate degree, correct?
A:     Yes. Yes.
Q:     And as of January, 2002, you didn't have an Associate's degree, correct?
A:     Correct. Yeah. A few classes I had to finish up.
Q:     Pardon me?
A:     I said I was planning on finishing a few classes to get it.
Q:     So you were also taking classes as of January, 2002?
A:     No.
Q:     In fact, you didn't start at Mott Community College in the winter of 2003, correct?
A:     I'd have to look at that. I don't know exactly when it was.
Q:     But certainly as of January, 2002, you were not enrolled in any classes at Mott Community College, correct?
A:     Yes.

(*Id.* at 85-88).

Pilarski's testimony until it was apprised by the father of another former girlfriend of Plaintiff's that Pilarski might have relevant information.  However, Defendant knew Pilarski's name and her relationship to Plaintiff, as evidenced by Plaintiff's deposition.  (*See* Pl.'s Dep. 141).  Pilarski's belated declaration that Plaintiff was lying does not prove that Plaintiff induced settlement through fraudulent actions.  Defendant's position throughout the course of these proceedings has been that Plaintiff was lying.  Defendant cannot change course and now contend that it reasonably relied on Plaintiff's representations. The fact that Defendant has – post-settlement – found a witness to challenge some of Plaintiff's evidence does not meet the burden necessary to overcome the settlement on the grounds of fraud.  Plaintiff did not prevent Defendant from accessing his former girlfriend, Carissa Pilarski.  Defendant's failure to contact her is not the result of any fraud on the part of Plaintiff.

The Court concludes, after hearing the testimony and reading the submissions, and applying the relevant legal precedent, that Defendant has not established that Plaintiff committed fraud.  Plaintiff is entitled to enforce the settlement agreement signed by Defendant's attorney.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion to Enforce Settlement Agreement.

**SO ORDERED.**

                                            s/Paul D. Borman
                                            PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

Dated:  August 29, 2006


CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on

August 29, 2006.

                                                s/Denise Goodine
                                                Case Manager